ELLIS, Judge,
dissenting.
On June 30,1977, plaintiff Emile R. Pois-senot entered into a contract with Guild-, craft Homes, Inc., to purchase Lot 63 of Yester Oaks Subdivision near Slidell, Loui *664 siana. The contract provided for a purchase price of $46,900.00 and was conditioned on plaintiff obtaining a loan for $27,-000.00 on specified terms. The contract contained the following provisions pertinent to this lawsuit:
“Possession and occupancy by purchaser at passing of act of sale or on see supplementary condition item one (1).

“Act of sale at expense of purchaser to be passed before lender’s Notary, at any time after Sept. 15, 1977, and not later than Oct. 1, 1977 ....'”
The supplement to the contract contained these provisions:
“1) If the house is not substantially complete within 130 days from date of Seller’s receipt of a V.A. copy of an approved C.R.V. and firm written commitment for a permanent loan to purchaser from a mortgage lender in conformity to lines 13 and 14 of contract, then damages at the rate of $5.00 per day will be assessed against the seller and deducted from the sale price of the property until substantial completion.
“2) Purchaser agrees that should this contract be cancelled by the purchaser, his assigns or heirs, for any reason whatsoever irrespective of any other conditions herein except those on lines 13 and 14, then seller shall receive as liquidated damages the amount of $2,000.00. This amount will be paid by the Broker directly to the seller from the buyer’s deposit as shown on line 30 of this contract.”
Mr. Poissenot made a $2,000.00 deposit and obtained the required loan commitment, and construction of the house was begun. The certificate of reasonable value (CRV) was issued on August 5, 1977.
October 1, 1977, passed without any action being taken by either party. On November 2,1977, Cynthia D. Smith, president of C. Derbes Smith, Inc., the realtor handling the sale, wrote a note to Guildcraft pointing out some irregularities in the still unfinished house. These had been brought to her attention by plaintiff.
A similar note was sent on November 25, 1977. On November 11,1977, Mr. Poissenot signed a sheet giving specifications for the color and decoration scheme of the house. He stated that this was necessary because the original had been lost.
On about December 1, 1977, Ms. Smith advised plaintiff that the house would probably not be ready until after Christmas. The 130 day time limit for completion of the house would have expired on December 13, 1977. Plaintiff then consulted counsel, who on December 7, 1977, directed the following letter to C. Derbes Smith, Inc.:
“Mr. Emile Poissenot has requested my assistance in securing the return of his deposit in the sum of $2,000 for the purchase of the subject realty. The Act of Sale for this property was to be passed under the terms of the contract not later than October 1, 1977. Mr. Poissenot had performed his part under the Agreement to secure financing and stood ready to purchase this property as of such date. “As the time for completion of construction has long since passed, it is our position the Seller has breached the bargain. If payment of the $2,000.00 is not received within 15 days, we intend to file suit in St. Tammany Parish for the return of the deposit plus an equal amount to be paid as penalty by the Seller and all reasonable attorney’s fees and costs which we incur.”
Thereafter, efforts to adjust the difference amicably were unsuccessful, and this suit was filed against Guildcraft and C. Derbes Smith, Inc., seeking the return of the $2,000.00 deposit from both parties and a $2,000.00 penalty from Guildcraft, and attorney’s fees. Smith answered and reconvened for a commission allegedly due on the sale and attorney’s fees. Guildcraft answered and reconvened for $2,000.00 allegedly due it under the supplement to the contract and attorney’s fees.
This is clearly not a contract in which time is of the essence and neither party was in default under its terms when October 1, 1977, came and went. See Article 1911, Civil Code; Fortenberry v. Decay, 279 So.2d *665 725 (La.App. 1st Cir. 1973). It was, therefore, necessary for either party formally to put the other in default. The rules applicable are as follows:
“Art. 1911. The debtor may be put in default in three different ways: by the term [terms] of the contract, by the act of the creditor, or by the operation of law:
“1, By the terms of the contract, when it especially provides that the party, failing to comply, shall be deemed to be in default by the mere act of his failure.
“2. By the act of the party, when at or after the time stipulated for the performance, he demands that it shall be carried into effect, which demand may be made, either by the commencement of a suit, by a demand in writing, by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses.”
* * * * * *
“Art. 1913. In commutative contracts, where the reciprocal obligations are to be performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must, at the time and place expressed in, or implied by the agreement, offer or perform, as the contract requires, that which on his part was to be performed, otherwise the opposite party will not be legally put in default.”
“Art. 1914. Although the contract be either not commutative, or, if commutative, the reciprocal obligations are not to be performed at the same time, yet the party wishing to put the other in default, must be himself ready, and must offer to receive the performance at the time and place stipulated in the contract or implied from the nature of the act to be done, and he can not avail himself of any demand at any other time or place; but if the obligation be to do or give any thing that may as well be given, or done at one time and place as at another, then the party failing may be put in default as well after as at the time the obligation becomes due. Promissory notes and bills of exchange are not governed by this rule, but by those of commercial law.”
Plaintiff’s effort to put the defendant in default did not comply with the requirements of the foregoing articles in two respects. First, the letter was written prior to the time fixed for the completion of the house by the supplement to the contract. Second, plaintiff did not offer to perform or to receive performance of the contract. In effect, the demand letter was an effort to withdraw from the contract without having first placed the defendants in default. This act, and the filing of this suit for the return of the deposit, amount to a breach of the contract by plaintiff, and defendants are therefore entitled to recovery on their re-conventional demand. It is clear that the only reason plaintiff wished to withdraw from the contract was that he had been told by Mrs. Smith that the house was not going to be completed until after Christmas, 1977. He attempted to withdraw from the contract before the date on which the house was to be completed under its terms. At trial, no showing was made that plaintiff was, in fact, ready, willing and able to receive title prior to the completion of the house. Since financing was involved, it would appear doubtful that the mortgage money would have been available prior to completion of the house, in any event.
The majority is ignoring the settled law relative to default in reaching its result. I believe that this law is dispositive of the case, and, therefore dissent.